IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED
U.S. District Court
District of Kansas
02/27/2026
Clerk, U.S. District Court
By: SND Deputy Clerk

ARISH RUSTAMI,

   Petitioner,

v.   Case No. 26-3018-JWL

KRISTI NOEM, Secretary,
 Department of Homeland Security;
TODD M. LYONS, Acting Director,
 U.S. Immigration and Customs Enforcement;
SAM OLSON, Field Office Director,
 U.S. Immigration and Customs Enforcement;
PAMELA BONDI, Attorney General,

   Respondents.

## MEMORANDUM AND ORDER

Petitioner, through counsel, filed a petition for habeas corpus under 28 U.S.C. § 2241, by which he challenges his detention by immigration officials. For the reasons set forth below, the Court **grants** the petition. Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **March 9, 2026**, and shall provide notice to this Court when that release is effected.

Petitioner is a native and citizen of Iran who was admitted to the United States in 2004. In 2010, petitioner was convicted of a crime in Missouri state court, and immigration officials initiated removal proceedings. On March 3, 2011, petitioner's removal was ordered, but petitioner was granted withholding of removal to Iran, meaning that he could only be removed to an alternative third country. On June 30, 2011, petitioner was released

from custody subject to an order of supervision (OSUP).  On June 23, 2025, petitioner was again taken into custody by immigration officials, and his supervised release was revoked. Petitioner is presently detained within this judicial district.

On August 11, 2025, petitioner filed a habeas action in this Court, and by Memorandum and Order of December 30, 2025, the Court granted the petition in part and denied it in part.  *See Rustami v. Noem*, 2025 WL 3760744 (D. Kan. Dec. 30, 2025) (Lungstrum, J.).  The Court granted petitioner's claim that officials had improperly failed to grant him an informal interview after the revocation of his release and his return to custody, and it ordered that such an interview take place by a certain date.  *See id.* at *4.[1] The Court denied petitioner's other claims.  *See id.* at *1-4.  In denying petitioner's claim that his detention had become unreasonably indefinite under the Supreme Court's *Zadvydas* framework, the Court concluded that petitioner had not met his burden to provide good reason to believe that there was no significant likelihood of his removal in the reasonably foreseeable future, as his detention had lasted only slightly longer than six months (the presumptively-reasonable period recognized by the Supreme Court) and petitioner had not contended that officials had made no efforts to remove him to a third country.  *See id.* at *2.

---

[1] The parties agree that an interview took place on January 7, 2026, in compliance with the Court's order.

On January 29, 2026, petitioner filed the instant petition, in which he again seeks release from detention by immigration officials. Respondents have filed an answer to the petition, and petitioner has filed a reply brief,[2] and the matter is therefore ripe for ruling.

Petitioner claims that his continued detention by immigration authorities is improper. To obtain habeas corpus relief, petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." *See* 28 U.S.C. § 2241(c)(3). This Court has habeas corpus jurisdiction to consider the statutory and constitutional grounds for immigration detention that are unrelated to a final order of removal. *See Demore v. Kim*, 538 U.S. 510, 517–18 (2003).

Generally, when an alien is ordered removed, the removal is to occur within a period of 90 days, referred to as the "removal period." *See* 8 U.S.C. § 1231(a)(1)(A). As the Court determined in its previous opinion, this period began for present purposes on June 23, 2025, when petitioner was taken into custody. *See Rustami*, 2025 WL 3760744, at *2 n.1. Specifically, petitioner claims that his detention for more than six months has now become unreasonably indefinite, and that his release is therefore required under the framework set forth by the Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

In *Zadvydas*, the Supreme Court noted that an alien must be detained during the 90-day removal period and that the Government may continue to detain an alien after that period or release the alien under supervision. *See id.* at 683 (citing 8 U.S.C. § 1231(a)(2),

---

[2] Although the Court expedited the briefing in this case, it is nevertheless dismayed somewhat by the fact that petitioner's counsel waited until the deadline to file a traverse, given the urgent nature of the request for release after a long detention and the Court's demonstrated willingness to grant relief in cases involving similar facts.

3

(6)). The Court held, however, that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by the statute." *See id.* at 699. The Court elaborated on that standard as follows:

> In answering that basic question, the habeas court must ask whether the detention in question exceeds a period reasonably necessary to secure removal. It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal. Thus, if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute. In that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. . . .
>
> We recognize, as the Government points out, that review must take appropriate account of the greater immigration-related expertise of the Executive Branch, of the serious administrative needs and concerns inherent in the necessarily extensive INS efforts to enforce this complex statute, and the Nation's need to "speak with one voice" in immigration matters. But we believe that courts can take appropriate account of such matters without abdicating their legal responsibility to review the lawfulness of an alien's continued detention.

*See id.* at 699-700 (citations omitted). The Supreme Court then established a presumptively-reasonable detention period of six months in which to accomplish removal, after which the reasonableness of an alien's detention should be determined as follows:

> After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the "reasonably foreseeable future" conversely would have to shrink. This 6-month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.

*See id.* at 701; *see also, e.g.*, *Anyimu v. Department of Homeland Security*, 2017 WL 193180, at *2-3 (D. Kan. Jan. 18, 2017) (Lungstrum, J.) (applying this framework); *Kaliku v. United States Immigration and Customs Enforcement*, 2024 WL 4854523, at *2-3 (D. Kan. Nov. 21, 2024) (Lungstrum, J.) (same); *Vargas v. Noem*, 2025 WL 2770679, at *2-3 (D. Kan. Sept. 29, 2025) (Lungstrum, J.) (same).

The Court finds that petitioner has met his burden to provide "good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future." More than eight months have now passed since the start of the removal period, a significant period of time beyond the six-month period deemed presumptively reasonable by the Supreme Court. Moreover, as petitioner notes and respondents do not dispute, officials have contacted a third country only once, which request was rejected by Pakistan over three months ago.

The Court further finds that respondents have not rebutted that showing by petitioner. Respondents' declarant states that officials "previously explored the possibility of removing Petitioner to either Afghanistan or Pakistan," but he does not provide any details concerning such efforts with the exception of the facts that a travel document request was sent to Pakistan authorities in October 2025 and was rejected within two weeks. According to the declarant, officials have been informed that other officials are working on petitioner's removal, but again no details have been provided, and thus it does not appear that any additional concrete steps have been taken to effect petitioner's removal. Neither respondents nor the declarant has even identified a potential third country for removal here; nor have they attempted to explain why additional steps have not yet been

5

taken, or what steps will be taken in the future. Respondents have not offered any specific analysis why this petitioner's removal is likely to occur anytime in the future.[3]

In sum, respondents have not shown a significant likelihood that, even though officials have failed to remove petitioner to a third country in the eight months since petitioner was detained, and even though they have not undertaken any specific or concrete steps to accomplish that removal in nearly four months, petitioner will nonetheless be removed to a third country in the reasonably foreseeable future. Petitioner's detention has become unreasonably indefinite, and the Court therefore concludes that petitioner must be released, subject to appropriate terms of supervision. *See Zadvydas*, 533 U.S. at 700. The petition is granted to that extent, and respondents are ordered to effect petitioner's release by **March 9, 2026**.[4]

---

[3] In recent cases, this Court has decried the absence of such analysis or explanation despite the Court's repeated complaints to that effect. *See, e.g.*, *Hassan v. Welsh*, 2026 WL 21234, at *3 (D. Kan. Jan. 5, 2026) (Lungstrum, J.). In their response in this case, respondents state that they understand the Court's request for greater detail on removal efforts (as expressed in *Hassan*), but that they simply "do not have additional detail to provide the Court at this time." The Court appreciates that counsel may not receive additional information from Government officials, but presumably those officials know why particular steps have or have not been taken, and they may have an understanding as to why removal efforts have not been successful. So long as those officials fail to provide that information to the Court and fail to make particularized arguments why a specific petitioner's removal is likely to be accomplished in the reasonably-foreseeable future, this Court will continue to conclude that respondents have not successfully rebutted that petitioner's initial showing under the *Zadvydas* framework.

[4] In light of this ruling, the Court need not address petitioner's alternative claim that officials have violated federal law by failing to make a custody review determination.

IT IS THEREFORE ORDERED BY THE COURT THAT the petition for habeas corpus pursuant to 28 U.S.C. § 2241 is hereby **granted**.  Respondents shall release petitioner from custody, subject to an appropriate order of supervision, by **March 9, 2026**, and shall provide notice to this Court when that release is effected.

IT IS SO ORDERED.

Dated this 27th day of February, 2026, in Kansas City, Kansas.

/s/  John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge